### UNITED STATES v. DRAWDY et al.

(District Court, S. D. Florida, at Tampa, Transferred to Miami. April 14, 1923.)

No. 513.

1. **Conspiracy ⊱43(6)—Indictment for conspiracy to violate Prohibition Act held good.**

    An indictment alleging that defendants conspired to import into, and to transport within, the United States intoxicating liquors, without a permit to do so, with averment of overt acts, *held* to charge an offense under Criminal Code, § 37 (Comp. St. § 10201), and National Prohibition Act. tit. 2, § 2.

2. **Conspiracy ⊱43(6)—An indictment for conspiracy to do two things is good, if one of such things is criminal.**

    An indictment charging a conspiracy to do two things is good, under Criminal Code, § 37 (Comp. St. § 10201), if one of such things constitutes an offense against the United States.

⊱For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Indictment and Information** ⊜➡119—**Not vitiated by unnecessary averments.**
Mere surplusage or unnecessary allegations will not vitiate an indictment which contains sufficient matter to constitute a crime.

4. **Indictment and information** ⊜➡125(5½)—**Indictment charging conspiracy to commit two offenses not bad for duplicity.**
An indictment for conspiracy under Criminal Code, § 37 (Comp. St. § 10201), is not bad for duplicity because it charges as the object of the conspiracy the commission of two distinct offenses.

5. **Conspiracy** ⊜➡43(3)—**Indictment for conspiracy to violate Prohibition Act need not allege means for its execution.**
In an indictment for conspiracy to violate the National Prohibition Act, it is not necessary to set forth a scheme or the means by which the conspiracy should be carried into execution.

Criminal prosecution by the United States against George W. Drawdy and others. On demurrer to indictment. Overruled.

William M. Gober, U. S. Atty., of Tampa, Fla., and Maynard Ramsey and Harry W. Reinstine, Asst. U. S. Attys., both of Jacksonville, Fla.

Cary D. Landis, of Deland, Fla., Blackwell, Donnell & McCracken and C. D. Abbott, all of West Palm Beach, Fla., and Clark & Maxwell and Bart A. Riley, all of Miami, Fla., for defendants.

CLAYTON, District Judge. [1] The indictment charges that the defendants (naming them)—

"did unlawfully, knowingly, willfully, and feloniously combine, conspire, confederate, and agree together, and together with divers other persons to the grand jurors unknown, to commit an offense against the United States, to wit, to violate the provisions of title II of the National Prohibition Act, in this, to wit, that they would import into and transport within the United States intoxicating liquors without a permit so to do as required by title II of the National Prohibition Act, and aid, abet, and assist in the importation into and transportation within the United States and within this district and the jurisdiction of this court intoxicating liquors without a permit so to do as required by title II of the National Prohibition Act, the general nature of the execution of said conspiracy to be substantially as follows, to wit: The said George W. Drawdy would import into and transport within the United States, or procure to be imported into or transported within the United States, intoxicating liquors without a permit so to do as required by the National Prohibition Act; and that the said Robert W. Milburn, who was then and there a federal prohibition agent acting for and in behalf of the United States under the Treasury Department and the Commissioner of Internal Revenue thereof, and whose duty it was to enforce the provisions of title II of the National Prohibition Act, would allow and permit the said George W. Drawdy so to import into and transport within the United States said intoxicating liquors without molestation or interference by him, the said Robert W. Milburn; that the said Robert C. Baker, who was then and there the sheriff of Palm Beach county, Florida, would allow and permit the said George W. Drawdy to transport intoxicating liquors within the state of Florida, or cause to be transported within the state of Florida said intoxicating liquors without molestation by him, the said Robert C. Baker, or those acting under him; that the said Robert W. Milburn aforesaid and Robert C. Baker aforesaid would and should receive of and from the said George W. Drawdy money pay and compensation for their actions in and about allowing and permitting the said George W. Drawdy to import and transport, or cause to be imported and transported, said intoxicating liquors as aforesaid; that the said Otis

⊜➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

R. Parker was then and there an attorney at law and the legal representative of the said George W. Drawdy in and about various matters, and that said moneys should be paid or transmitted to the said Robert C. Baker and the said Robert W. Milburn by and through the said Otis R. Parker; that the said Edgar C. Thompson was a person who would and should make the arrangements with said Milburn and said Baker for said protection and for the permission by the said Milburn and said Baker to so permit said importation and transportation of said intoxicating liquors as aforesaid."

And the indictment then goes on to charge:

"And the grand jurors aforesaid upon their oaths aforesaid do further present that pursuant to said conspiracy and for the purpose of carrying into effect the object thereof the said defendants committed the following overt acts," etc.

The indictment then proceeds to specify overt acts charged to have been done in pursuance of the alleged conspiracy.

The material provisions of the National Prohibition Act (41 Stat. 305) to be here considered are to be found in section 1, title 2, which defines the word "liquor" and the phrase "intoxicating liquor" to be "alcohol, brandy, whisky, rum, gin, beer, ale, porter, and wine," etc., "containing one-half of 1 per centum or more of alcohol by volume which are fit * * * for beverage purposes"; section 3, title 2, which declares that "no person shall on or after the date when the eighteenth amendment to the Constitution of the United States goes into effect, manufacture, sell, barter, transport, import, export, deliver, furnish or possess any intoxicating liquor except as authorized in this act, and all the provisions of this act shall be liberally construed to the end that the use of intoxicating liquor as a beverage may be prevented"; and section 6, title 2, states that "no one shall manufacture, sell, purchase, transport, or prescribe any liquor without first obtaining a permit from the Commissioner so to do," etc.

The defendants have demurred to the indictment, assigning various grounds. The important ones will be considered, and those not herein referred to are regarded as without merit.

Plainly the law prohibits the importation and also the transportation of intoxicating liquors for beverage purposes. The importation and transportation of such liquors are allowed for certain specified limited purposes stated in the act, and the act prescribes in detail way how the liquors for the excepted uses may be made available; that is to say, by obtaining permit from the Commissioner of Internal Revenue, etc.

[2] The indictment, when analyzed, shows that the pleader and the grand jury have charged the defendants with having conspired to import and transport forbidden liquor—that is to say, liquor for beverage purposes—if the unnecessary words in such case, "without having obtained a permit," etc., be treated as surplusage and disregarded. On the other hand, if the words "without a permit," etc., be retained as not mere surplusage, then the charge is that the defendants conspired together to violate that provision of the law which allows the importation and transportation of liquor in the manner and for the purposes specified in the excepted cases where liquor can be lawfully obtained by a permit so to do. In the instances where liquor can thus be lawfully obtained by the specified permit, record thereof must be

made. So this law, so far as the conspiracy is concerned, may be offended against in either of two ways, importing intoxicating liquor generally, and importing intoxicating liquor for the special excepted purposes named without a permit so to do. It is unnecessary, however, to determine whether the allegations in regard to the importation of liquor alone, if carried out, would be criminal. The indictment alleges a conspiracy to do two things, one of which was the transportation of liquor, in itself criminal, and it would not matter in the slightest whether the other thing which was included in the conspiracy was criminal. Any conspiracy which involves the doing of a criminal act is itself criminal whether it involves other things which are criminal or not criminal.

[3] Mere surplusage or unnecessary allegations will not vitiate an indictment which contains sufficient matter to charge a crime. Adams Express Co. v. Commonwealth, 124 Ky. 160, 92 S. W. 932, 5 L. R. A. (N. S.) 630. This case was reversed in 206 U. S. 138, 27 Sup. Ct. 608, 51 L. Ed. 992, but on a point in no wise involving the sufficiency of the indictment. The Court of Appeals of Kentucky, in Adams Express Co. v. Commonwealth, supra, said:

"The appellant was indicted by the grand jury of Knox county, Ky., for a violation of the Prohibition Law prevailing therein. The indictment contains much surplusage with reference to what is called the 'C. O. D. statute,' and as to the manner in which the Adams Express Company received the whisky said to have been sold by it in contravention of law. Stripped of all unnecessary verbiage, the indictment contains a statement sufficient to charge the defendant company with a sale of liquor by retail, in violation of the prohibition statute applicable to Knox county, and as to the unnecessary allegations they may be dismissed from view under the shelter of the maxim, 'Utile per inutile non vitiatur.'"

It is law as old as the hornbooks that the introduction of averments which are superfluous and immaterial will not render the indictment bad. If the indictment can be supported without them, they will be rejected as surplusage. Clark's Criminal Procedure, 178. I am of opinion that the indictment sufficiently charges that the defendants conspired together to violate the National Prohibition Law by the importation and transportation of forbidden liquor, and that after setting forth the general plan for the execution of the conspiracy the indictment goes beyond what was actually required to charge a conspiracy to violate this law. The defendants cannot be prejudiced by these allegations as to the nature of the execution of the conspiracy. But, on the other hand, it is to their advantage that they are by such allegations apprised of what the government expects to prove. The rule is that, when the criminality of a conspiracy consists in an unlawful agreement of two or more persons to compass or permit some criminal or illegal purpose, that purpose must be fully and clearly stated in the indictment. Pettibone v. United States, 148 U. S. 197, 13 Sup. Ct. 542, 37 L. Ed. 419. It cannot be said that this indictment does not fairly meet this requirement.

[4] The defendants insist by their demurrer that they are charged with a conspiracy to commit two separate offenses, that is, the importation of liquor and the transportation of liquor, and that therefore the indictment is duplicitous and bad. It must be borne in mind,

however, that the indictment is for conspiracy to violate the National Prohibition Act, and it is not an indictment charging the direct commission of some offense contrary to that law. This indictment is founded on section 37 of the federal Penal Code of 1910 (Comp. St. § 10201), in the words:

"If two or more persons conspire either to commit any offense against the United States, * * * and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined * * * or imprisoned * * * or both."

The indictment charges that the defendants conspired together to import and transport, as one continuing or combined act in violation of the law; the transportation dovetailing into the importation. In John Gund Brewing Co. v. United States, 206 Fed. 386, 124 C. C. A. 268, it was held that an indictment which charges a conspiracy to commit two distinct offenses was not for that reason duplicitous, and that the law permits the charge of a conspiracy to commit two distinct offenses, if there is no duplicity charged in the conspiracy itself, for the conspiracy itself is entirely distinct from the unlawful acts which the parties had in view when they entered into the conspiracy; and Judge Trieber illustrated by going on to say that parties may enter into a conspiracy to commit the crime of burglary, and, for the purpose of destroying the evidence thereof, to also commit the crime of arson, and that, while burglary and arson are two distinct offenses, punishable differently, and could not be charged in one count of an indictment, a charge of conspiracy to commit the two offenses is the charge of one offense only, namely, conspiracy.

In Steigman v. United States, 220 Fed. 63, 135 C. C. A. 631, the court said that:

"The contention that the 'indictment was bad for duplicity, in that it charged in the same count two different crimes, without distinguishing which crime either of the defendants was indicted for,' is wholly without merit. Two crimes are alleged; but one crime is charged. The crime of conspiracy is the one charged, and it is charged against both defendants. The crime of conspiracy, from its very nature, precedes or contemplates the perpetration of another offense, and a charge of conspiracy under the statute, without an allegation of the offense to which the conspiracy relates, as being intended or consummated, would be wholly impossible of statement. There is no duplicity in an indictment which alleges that Louis Steigman unlawfully concealed property from his trustee in bankruptcy, and charges a conspiracy between Louis Steigman and David Steigman to procure the doing of that very thing."

Heike v. U. S., 227 U. S. 131, is cited with approval.

Violette et al. v. U. S. (C. C. A.) 278 Fed. 163, was where the defendants were charged with the conspiracy to possess and transport intoxicating liquors, and the indictment was held good. Judge Hunt, speaking for the court, said:

"It is clear that the fourth and sixth counts are sufficient. The fourth charges that the defendants unlawfully conspired to have intoxicating liquor in their possession intended for use in violating the National Prohibition Act. The possession with the unlawful intent is plainly alleged. The sixth count is a sufficient charge of conspiring to transport whisky without a permit from the Commissioner of Internal Revenue, and without making a record as required by law."

Of course, to transport liquor without a permit is one way of violating the law, and to transport it, even under permit, *without making a record* as required by law, is another way of infracting the act. In the Violette Case, supra, certiorari was denied by the Supreme Court. 258 U. S. 626, 42 Sup. Ct. 382, 66 L. Ed. 798.

It is no answer to what has been said above that, when an indictment charges the direct commission of a specific act in violation of the Volstead Law, it would be duplicitous to couple it with another direct act in the same count of an indictment. Here the charge is a conspiracy to import and transport the liquor, both in violation of the law. It is a charge of a conspiracy to do both things as a continuing performance in pursuance of the conspiracy previously formed.

As to the contention that the indictment is vague, indefinite, and uncertain, and does not clearly or sufficiently inform the defendants, or either of them, of the charge they or either of them is expected to meet at the trial, it is hardly necessary to say more than that it is apparent, from the accusatory part of the indictment, the charge is that the defendants conspired to import and transport the liquor in violation of the law.

[5] In consideration of a further criticism of the indictment, it must be said that it is not necessary, in an indictment for conspiracy to violate the National Prohibition Act, to set forth a scheme or means by which the conspiracy should be carried into execution. The case here is to be differentiated from that of a scheme to defraud by use of the mails in pursuance of the scheme. There the scheme itself is of the essence of the offense, and therefore it is material to set forth the scheme in connection with the charge of the fraudulent use of the mails in pursuance thereof. If there was no scheme to defraud, there could be no fraudulent use of the mails, and the statute could not be violated.

Here the Volstead Act itself denounces as crime the things or acts therein forbidden. It was not necessary to set forth the means or the way whereby the law was intended to be violated by the conspirators further than to say that they conspired together in the way charged to import and transport as a part of the same transaction the intoxicating liquor in violation of the law.

It may be that the indictment is subject to some criticism. But it contains a substantial accusation of crime, and its averments furnish the accused with such a description of the charge against them sufficient to enable them to make defense, and also sufficient for them, in case of conviction or acquittal, to support a plea against further prosecution in the same cause. Moreover, there is no defect in the indictment that would tend to prejudice the defendants. The mandate of the statute is that no indictment shall be deemed "insufficient, nor shall the trial, judgment, or other proceedings therein be affected by reason of any defect or imperfection in the matter of form only, which shall not tend to the prejudice of the defendant." Rev. Stat. U. S. § 1025 (Comp. St. § 1691); Hume v. U. S., 118 Fed. 689, 55 C. C. A. 407.

Order will be entered overruling the demurrers.